TINSLEY *et al. v.* WEIDINGER.

*(City Court of New York, General Term.  November 1, 1889.)*

SALE—DAMAGE IN TRANSIT—RIGHTS OF BUYER.

A bill of sale was of "five hundred (500) to six hundred (600) tons kainit in bulk, * * * delivered *ex* vessel in New York harbor. Shipment to be made from a German port by sailing vessels." During the voyage the kainit was damaged by the seas. *Held*, that the purchasers were entitled to recover from the seller the difference between the contract price and the market price of the kainit when received.

Appeal from trial term.

Action by James G. Tinsley and others against Paul Weidinger to recover the sum of $627.40, being the difference between the market price and the contract price of 502 tons of kainit in December, 1888, agreed to be sold by the defendant to the plaintiffs under a contract in writing dated May 17, 1888; and $50.20, the cost of the schooner hired pursuant to the terms of said contract, to carry the kainit from New York to Richmond, Va. The contract under which the questions arise is in these words: "New York, May 17th, 1888. Sold to Messrs. Jas. G. Tinsley & Co., Richmond, Va., for account of Mr. Paul Weidinger, New York, five hundred (500) to six hundred (600) tons kainit in bulk, testing minimum twenty-three (23) per cent. sulphate potash, per German analysis, at eight dollars and fifty cents ($8.50) per ton of 2,240 lbs., German invoice weight, delivered ex vessel in New York harbor. Shipment to be made from a German port by sailing vessel or vessels, in August or and September, 1888. In event of foreign war preventing shipment, this contract to be canceled. Buyers to receive goods when vessel is ready to discharge. Terms, cash on delivery at New York. Seller hereby guaranties that, should he sell any kainit for shipment named above at a lower price than herein named, the price for this contract shall be the same. Buyers to furnish the vessel to carry the goods, which shall be consigned to seller's order at Richmond, Va. CHAS. F. GARRIGUES." Written across the face: "Accepted. PAUL WEIDINGER." When the kainit arrived, it was found that 100 tons had been pumped overboard, and that the balance of the cargo had been damaged by the seas upon the voyage. What remained of the cargo upon its arrival was tendered to the plaintiffs, who refused to take the same, upon the ground that the goods were neither of the quality nor quantity called for by the contract. The plaintiffs were ready to receive the kainit, and pay for it; but the defendant, for the reason stated, was unable to perform his contract. The papers are in evidence showing the European weight return, the German analysis, and the bill of lading, dated September 28, 1888. There is no question of fraud or identification of the cargo involved. The court directed a verdict in favor of the plaintiffs for $687.56, the amount claimed, with interest, and from the judgment entered thereon the defendant appeals.

Argued before McADAM, C. J., and EHRLICH and HOLME, JJ.

*Johnston & Johnston*, for appellant.    *Billings & Cardozo*, for respondents.

PER CURIAM. This was not a sale of goods "to arrive," within the proper meaning of that term. The goods were not purchased to be shipped from Germany under the direction or at the risk of the purchasers; nor were the goods purchased while in transit on the ocean. By the contract, the defendant sold 500 tons of kainit, to be delivered from a vessel in New York harbor, and the plaintiffs agreed to pay for it on such delivery. In this respect the case differs from *Heller* v. *Manufacturing Co.*, 39 Hun, 547. The contract here was an absolute present sale, and, for failure to deliver, the defendant is liable. The fact that part of the kainit was pumped overboard, and the balance was injured, while at sea, simply proves that the defendant, without any fault on the part of the plaintiffs, was unable to perform his part of the contract in regard to delivery in New York harbor. The plaintiffs had no interest in the shipment of the goods, nor the method of shipment. These matters did not concern them. The contract expressly provided, in unmistakable language capable of no other meaning, that the kainit should be delivered by the defendant from a vessel in New York harbor, and that the terms of payment were cash on such delivery at New York. All the risks in regard to performance devolved upon the defendant, and could not be cast upon the plaintiffs, who assumed the mere risk of being able to pay for the property when tendered to them in New York, and then only upon tender of the proper quality and quantity of kainit. In order to make a tender to the

plaintiffs in New York, it was necessary for the defendant to have the property present, so that this duty rested on him. He failed to have the property here, and was consequently in default, for the consequences of which he is answerable; for the causes which led to the failure are not within any exception allowed by the contract as ground for excuse. By this construction of the contract, the legal propositions involved are simplified, and freed from the technicalities which appear in many of the reported cases. In short, the case resolves itself into the ordinary one of breach of contract to deliver; and this is what we think it is. There was no request to go to the jury, and no dispute as to the amount of the damages sustained. It follows that the judgment appealed from must be affirmed, with costs.