TINSLEY *et al.* v. WEIDINGER.[1]

(*Common Pleas of New York City and County, General Term.* February 3, 1890.)

SALE—DAMAGE IN TRANSITU—RIGHTS OF BUYER.

     A bill of sale was of "Five hundred (500) to six hundred (600) tons kainit, in bulk, * * * delivered *ex* vessel in New York harbor. Shipment to be made from a German port, by sailing vessels." ·During the voyage the kainit was damaged by the seas. *Held*, that the purchasers were entitled to recover from the seller the difference between the contract price and the market price of the kainit when received.

Appeal from city court, general term.

Action by James C. Tinsley and Isaac Davenport, Jr., against Paul Weidinger, to recover the sum of $627.40, being the difference between the market price and the contract price of 502 tons of kainit in December, 1888, agreed to be sold by the defendant to the plaintiff under a contract in writing dated May 17, 1888, and $50.20, the cost of the schooner hired, pursuant to the terms of said contract, to carry the kainit from New York to Richmond, Va. The contract under which the questions arise is in these words:

"NEW YORK, May 17th, 1888.

"Sold to Messrs. Jas. G. Tinsley & Co., Richmond, Va., for account of Paul Weidinger, New York, five hundred (500) to six hundred (600) tons kainit, in bulk, testing minimum twenty-three (23) per cent. sulphate potash per German analysis, at eight dollars and fifty cents ($8.50) per ton of 2,240

---

[1]Affirming 7 N. Y. Supp. 260.

lbs. German invoice weight, delivered *ex* vessel in New York harbor. Shipment to be made from a German port, by sailing vessel or vessels, in August and September, 1888. In event of foreign war preventing shipment, this contract to be canceled. Buyers to receive goods when vessel is ready to discharge. Terms, cash on delivery at New York. Seller hereby guaranties that, should he sell any kainit for shipment, named above, at a lower price than herein named, the price for this contract shall be the same. Buyers to furnish the vessel to carry the goods, which shall be consigned to seller's order at Richmond, Va.                         CHAS. F. GARRIGUES."

[Written across the face:]  "Accepted. PAUL WEIDINGER."

When the kainit arrived, it was found that 100 tons had pumped overboard, and that the balance of the cargo had been damaged by the seas upon the voyage. What remained of the cargo upon its arrival was tendered to the plaintiffs, who refused to take the same, upon the ground that the goods were neither of the quality nor quantity called for by the contract. The plaintiffs were ready to receive the kainit, and pay for it; but the defendant, for the reason stated, was unable to perform his contract. The papers are in evidence showing the European weight return, the German analysis, and the bill of lading dated September 28, 1888. There is no question of fraud, or identification of the cargo, involved. The court directed a verdict in favor of the plaintiffs for $687.56, the amount claimed, with interest; and from the judgment entered thereon the defendant appeals.

Argued before LARREMORE, C. J., and BOOKSTAVER and BISCHOFF, JJ.

*Johnston & Johnston,* for appellant.  *Billings & Cardozo,* for respondents.

LARREMORE, C. J.   This case is reported on the appeal to the general term of the city court, (7 N. Y. Supp. 260,) and a full statement of facts is given. It will therefore be unnecessary to repeat such statement here. I have endeavored to give to the argument of the learned counsel for appellant the careful consideration it merits by reason of its elaborate collation of authorities, and its lucid exposition of them. His brief would be convincing and conclusive, if the contract in question did not contain the words "delivered *ex* vessel in New York harbor." As it is, he is arguing another question than the real one here involved. In *Heller* v. *Manufacturing Co.,* 39 Hun, 547, the nearest corresponding provision was that the merchandise was "to be shipped in bulk from German ports to the port of New York." In that case, as in a large number of similar cases cited by appellant, the court properly held that it was the intent of the parties that the sale should be consummated, and the title pass, upon delivery of the goods on board the ship in the German port, and that consequently the vendee took all subsequent risks. In the case at bar, on the other hand, the contract provides that the kainit shall be "delivered *ex* vessel in New York harbor." I see no other possible way of construing this contract than to hold that it was made an integral part thereof that the merchandise should be delivered, not in Germany, but at New York. As defendant confessedly failed to make such delivery of goods of the stipulated quantity and quality at the port of New York, he became liable in damages, as sued for in the first cause of action. In *Heller* v. *Manufacturing Co., supra,* the contract also contains a reference to "delivery of goods *ex* vessel at New York." But there this phrase evidently means transfer of actual possession, as distinguished from legal delivery, relating to the time of payment; just as, in the contract in the case at bar, it is stipulated, in addition to the provision that the delivery to the vendee shall occur in New York, that the terms are "cash on delivery at New York." This clause deferring payment in both cases does not affect the question of intent as to delivery, in the legal sense of the term, which may be constructive as well as actual. In the *Heller Case* the word "delivery" is used in two different significations,— a legal sense and a colloquial sense. In one place it stands for assumption of

legal control; in the other, for the beginning of physical possession. An inspection of the whole instrument in the *Heller Case* shows the intent to deliver, in the legal sense of the word, at the port in Germany. A similar inspection of the entire contract in the case at bar discloses an intention that delivery, in the legal sense, and in the popular sense of transfer of physical possession, should be simultaneous, and should both take place at the port of New York. This obvious meaning of the language is further borne out by the clause that "buyers shall furnish vessel at New York to carry the goods to Richmond." Evidently the intention was that the vendor was to deliver the goods in New York, and that there, although they had not arrived at their ultimate destination, the vendee was to accept them, and assume all further charge and risk.

The evidence as to the damage sustained under the second cause of action is not very full. It is not shown, for instance, that plaintiff could not have used the schooner he chartered to ship the goods he bought to take the place of those contracted for with defendant, and that therefore the amount expended on account of such schooner was so much dead loss. But the actual expenditures were proved; and, as no point was made at the trial, or raised on this appeal, as to the lack of proof on this particular count, I will hold the evidence sufficient to support the direction of the court. The judgment should be affirmed, with costs.